Opinion issued December 21, 2007




     










In The
Court of Appeals
For The
First District of Texas




NO. 01-07-00900-CV




DEWAYNE CHARLESTON, APPELLANT

V.

WALLER INDEPENDENT SCHOOL DISTRICT, APPELLEE





On Appeal from the 155th Judicial District Court
Waller County, Texas
Trial Court Cause No. 07-08-18984




O P I N I O N

          In this accelerated bond validation suit,


 appellant, DeWayne Charleston,
appeals the judgment of the trial court that granted a final judgment in favor of
appellee, Waller Independent School District (“WISD”) and the orders of the trial
court requiring him to post security and dismissing him from the proceedings. In five
issues on appeal, Charleston argues that (1) the bond election and sale of the bonds
should be voided; (2) the trial court lacked authority to enjoin proceedings in federal
court; (3) the trial court erred by ordering the Attorney General to approve the bonds;
(4) the trial court erred in declaring that WISD was entitled to state debt-relief funds;
and (5) the trial court should not have required Charleston to post bond.



          We affirm in part and dismiss for want of jurisdiction in part.
Background
          On May 12, 2007, WISD voters approved the sale of school bonds valued at
$49.29 million for the “construction of a new elementary school, conversion of
Waller Junior High and Schultz Middle School to 6-8 grade campuses, addition of
office space for technology, renovation on all seven existing campuses, technology
improvements, purchase [of] school buses, and the construction [of] a new District
stadium.” 
          On August 9, 2007, Charleston filed an Original Petition, Application for
Temporary Restraining Order, and Application for Temporary Injunction in the 151st
Judicial District Court of Harris County


 to invalidate the bonds on the ground that
WISD had violated the Texas Open Meetings Act


 (“TOMA”).


 Charleston’s original
petition alleged that WISD failed to comply with TOMA because WISD “has not
posted notice of its meetings with the Waller County Clerk’s office. Furthermore,
between January 1 and July 30, 2007, the Waller ISD Board of Trustees held at least
fifteen (15) specially called meetings, all of which related to passage and
implementation of a $49 million dollar bond issue for new construction and
renovations within Waller ISD, and none of which were properly posted.” He also
asserted that WISD had scheduled the election on May 12, 2007, “four days after the
close of the Spring Semester at Prairie View A&M University. In other words,
Defendants scheduled the election on a day when the predominantly African-American student body of Prairie View A&M University would be out of town.”
Charleston also alleged that the May 12, 2007 election was not pre-cleared by the
Department of Justice’s Voting Rights Section.


 
          In the declaratory judgment portion of his pleading, Charleston asked the court
to “declare that all votes taken by Defendant Waller ISD during special meetings
called for the Year 2007 be declared invalid and void, including, but not limited to
the calling of any special elections, the purchase of any school bonds or real estate,
and the awarding of any contracts, relating to any new construction or renovation
projects for Waller ISD.” He asked that the May 12, 2007 bond election be declared
void because it violated section 11.0581 of the Education Code.


 
          On August 20, 2007, because of Charleston’s suit in Harris County, WISD filed
the instant action for an expedited declaratory judgment in Waller County


 to validate
the bonds that the voters had approved.


 
          On August 21, 2007, a temporary injunction hearing was held in Charleston’s
Harris County suit before Judge Caroline Baker. At the hearing, Charleston argued
that section 551.054 of the Government Code, which requires that notice of certain
state political subdivisions be posted with the county clerk,


 should be construed
together with section 551.051, the section of the Code which requires that notice of
school district meetings be placed in the school district’s central administrative
office.


 The parties do not dispute that the Harris County court denied Charleston’s
motion for temporary injunction.
          Charleston then intervened in the instant case, WISD’s declaratory judgment
suit in Waller County (the Waller County suit), by filing a motion to dismiss on
September 21, 2007. He did not seek a temporary injunction in this suit against
WISD’s issuance of the school bonds. On the day of trial in WISD’s Waller County
suit, Charleston also filed a federal suit, Jackson v. WISD.



          The declaratory judgment action filed by WISD in Waller County was tried on
September 24, 2007. At the opening of the trial, the court permitted Charleston to
argue that this suit should be abated during the pendency of the federal suit he had
filed that morning. Charleston argued that he had raised issues for the first time in
the federal suit “which will take priority over this lawsuit” and that his federal claims
could not be consolidated with the claims in state court. The trial court declined to
abate the state court case on “the mere filing of a federal action and not the action of
a federal court itself.” It overruled Charleston’s plea in abatement. 
          Robert Pierce, president of the WISD school board, then testified on the merits
of WISD’s declaratory judgment action. He testified that notices of WISD meetings
were properly posted in accordance with the law by WISD’s posting the notice at the
administration office and on its website.


 He also testified to the damages that would
be caused by any further delay in issuance of the bonds due to the pendency of the
lawsuit. He testified that an existing legislative debt allowance (“EDA”) allowed
WISD to have “state matching funds that would drop our debt down significantly,”
and that it would be “very significant for the school district,” if the bonds were issued
while the allowance existed. He explained that if WISD did not get the state
matching funds, the school district taxpayers would have to pay an additional
unmatched $20 million to pay off the bonds. 
          Charleston questioned Pierce on whether the bond allocation of $17 million for
a stadium was prudent. WISD objected to relevance, and the objection was sustained.
Charleston responded that his questions regarding allocation of the bonds related to
equal protection issues brought in his federal suit. The trial court explained that it
could review the procedures leading up to the bond election but that it could not
address issues raised in the federal lawsuit but not in the lawsuit before the court. 
Charleston then questioned Pierce about the school meeting notices posted by WISD,
and Pierce admitted that WISD never posted notice of its meetings with the county
clerk. Charleston then called Richard McReavy, the WISD superintendent, who
likewise testified that WISD did not post any notices of the school district meetings
with the county clerk. 
          The trial court ultimately ruled that WISD’s posting of notice at the school
district’s administrative office “was in compliance with section 551.051 and was
appropriate.” The trial court orally granted WISD’s petition for declaratory
judgment. WISD then filed a motion for security, asking the trial court to require
Charleston to post a bond in accordance with section 1205.101 of the Texas
Government Code and to set a show cause hearing on the motion. See Tex. Gov’t
Code Ann. § 1205.101 (Vernon 2000). Section 1205.101 of the Government Code 
provides that, prior to entry of final judgment in a bond validation suit brought under
Chapter 1205 of the Code, the issuer may move for an order that intervenors must
post a bond to cover the costs of delay caused by their continued participation in the
suit should the issuer ultimately prevail or else be dismissed from the suit. Id. 
Specifically, section 1205.101 provides, 

          (a) Before the entry of final judgment in an action under this
chapter, the issuer may file a motion with the court for an order that any
opposing party or intervenor, other than the attorney general, be
dismissed unless that person posts a bond with sufficient surety,
approved by the court, and payable to the issuer for any damage or cost
that may occur because of the delay caused by the continued
participation of the opposing party or intervenor in the action if the
issuer finally prevails and obtains substantially the judgment requested
in its petition.

Id. § 1205.101(a) (Vernon 2000). The court must “grant an issuer’s motion for
security under section 1205.101 unless, at the hearing on the motion, the opposing
party or intervenor establishes that the person is entitled to a temporary injunction
against the issuance of the public securities.” Id. § 1205.102 (Vernon 2000). Section
1205.103 provides, 
          (b) The bond must be in an amount determined by the court to be
sufficient to cover any damage or cost, including an anticipated increase
in interest rates or in a construction or financing cost, that may occur
because of the delay caused by the continued participation of the
opposing party or intervenor in the acts if the issuer finally prevails and
obtains substantially the judgment requested in its petition.

Id. § 1205.103(b) (Vernon 2000). 
          The Government Code provides that the trial court “shall dismiss an opposing
party or intervenor who does not file a required bond before the 11th day after the
date of the entry of the order setting the amount of the bond.” Id. § 1205.104 (Vernon
2000). Unless the dismissal is appealed, a dismissal under section 1205.104 is a final
judgment of the court. Id. § 1205.104(b). Once the trial court has dismissed an
opposing party or intervenor who fails to file a bond required by chapter 1205, “No
court has further jurisdiction over any action to the extent that action involves any
issue that was or could have been raised in the action under this chapter, other than
an issue that may have been raised by an opposing party or intervenor who was not
subject to the motion.” Id. § 1205.104(c) (Vernon 2000). 
          Finally, section 1205.105 provides,
(c) If an appeal is not taken [from an order dismissing a party or
intervenor for failure to file a bond required by chapter 1205] or if the
appeal is taken and the order of the lower court is affirmed or affirmed
as modified, and the required bond is not posted before the 11th day
after the date of the entry of the appropriate order, no court has further
jurisdiction over any action to the extent it involves an issue that was or
could have been raised in the action under this chapter, other than an
issue that may have been raised by an opposing party or intervenor who
was not subject to the motion. 

Id. § 1205.105(c) (Vernon 2000).

          On October 2, 2007, the trial court held a show cause hearing on WISD’s
motion for security pursuant to section 1205.101. After the hearing, the trial court
granted WISD’s motion for security. The trial court ordered Charleston to post a
bond for $715,000 if he wished to continue to participate in the suit. The trial court
signed a final judgment the same day. The judgment declared that WISD was
authorized to issue the proposed public securities and that the special election held
on May 12, 2007 was legally and validly held pursuant to the Texas Education Code
and the Texas Election Code. Charleston failed to post the bond required by the trial
court’s October 2, 2007 order.
          On October 9, 2007, WISD filed a motion to dismiss Charleston from the
proceedings pursuant to section 1205.104 of the Government Code, which provides
for dismissal of an opposing party or intervenor who does not file a security bond
required by an order pursuant to section 1205.104 “before the 11th day after the date
of the entry of the order setting the amount of the bond.” Id. § 1205.104(a). On
October 13, 2007, after a hearing on WISD’s motion to dismiss, the trial court
dismissed Charleston for failing to post the bond. On the same day, the trial court
also denied Charleston’s renewed motion to dismiss the instant action. 
          Charleston appeals the Waller County trial court’s final judgment on WISD’s
declaratory judgment action, the October 2, 2007 order requiring him to post security
before the 11th day after issuance of the order, and the October 13, 2007 order
dismissing Charleston from the lawsuit.
Security for Issuer
          In his fifth issue on appeal, Charleston argues that the trial court erred by
requiring him to post security.


 
          At the October 2, 2007 show cause hearing on WISD’s motion for security,
WISD argued that it would lose money from the EDA if the bonds were not approved
in a timely fashion, that it would also lose the benefit of interest that would have been
earned on the money while it was in the bank, and that there would be increased costs
as a result of construction inflation because of the delay caused by Charleston’s
continued participation in the bond validation proceedings. See Tex. Gov’t Code
Ann. § 1205.102.
          Gary Blanton, the managing principal of HSW Group, L.L.P., Architecture and
Engineering Company, testified that HSW assisted WISD “in their bond planning
efforts and also the Political Action Committee with their promotion of the bond.” 
Blanton testified that a delay in construction of three months would cost WISD
$266,508, a six-month delay would cost $715,689, and a nine-month delay would
cost $1,164,870. On cross-examination, Charleston wanted to know why the stadium
came first. He did not elicit testimony or present evidence showing that Blanton’s
testimony on the cost of construction delays was inaccurate. 
          WISD’s counsel testified that the appellate process would cause losses due to
construction delays. He opined that the court of appeals would not act any sooner
than three months and that it would more likely be nine to twelve months. He also
testified that there would be an additional delay of three to six months if an appeal
were taken to the Texas Supreme Court. Charleston testified that he was not
responsible for delays prior to trial, but he did not rebut WISD’s testimony regarding
the delays his appeal would cause.
          Although section 1205.102 of the Government Code expressly provides that
“The court shall grant an issuer’s motion for security under Section 1205.101 unless,
at the hearing on the motion, the opposing party or intervenor establishes that the
person is entitled to a temporary injunction against the issuance of the public
securities,” see Tex. Gov’t Code Ann. § 1205.102 (emphasis added), Charleston
neither presented evidence on the adequacy of the appeal bond at the October 2 show
cause hearing on WISD’s motion for security nor showed at that hearing that he was
entitled to a temporary injunction against the issuance of the school bonds.
          Instead, Charleston’s counsel raised pre-clearance issues that he contended had
delayed issuance of the bonds until early August 2007. The court cautioned
Charleston’s counsel that the delay relevant to WISD’s section 1205.101 motion for
security was “essentially today going forward. Not something that has happened in
the past.” Charleston’s counsel then questioned McReavy on why construction would
first start on the football stadium. Charleston’s counsel explained his questions on
the ground that the issue was “issuing a bond to prevent the district from suffering
some harm from losing money, and we’re trying to show that that loss is largely
manufactured.” 
          On cross-examination by WISD, McReavy was asked if the improvements
needed to start now or whether they could wait until later, and he responded, “We
need to move quickly on this for all of these things to occur. We need to move
forward on the bond issue.” When asked what would happen if construction on the
football stadium did not begin by October 26, 2007, McReavy answered that, a
“group of students will not use the stadium. The stadium will not be available for that
group of students to use.” When asked if the elementary school need to be started,
McReavy said, “[W]e need to move forward on the elementary schools to have them
ready for use, to be ready in the summer of 2009, that new elementary, so that we can
take care of the students that we have and are projected to have at that time, especially
moving our 5th graders for academic reasons to the elementary school.” 
          After both sides had rested, the court permitted closing arguments. In its
closing argument, WISD pointed out that a person is excused from posting security
to prevent his dismissal from a bond validation case if he establishes at the hearing
on the motion for security that he is entitled to a temporary injunction against
issuance of the bonds. But it argued that, in this case, it was impossible for
Charleston to prove his entitlement to an injunction against issuance of the bonds.
Not only had the Harris County court ruled that WISD had properly posted notice of
the school bond election and denied the injunction against issuance of the bonds
Charleston sought in that case, but the Waller County court itself had tried WISD’s
declaratory judgment and had granted WISD’s petition for a judgment declaring that
notice of the district meetings on the bond issue was properly given. WISD asked
that Charleston be required to post bond of $715,689.15, as security for his continued
participation in the case, which was the projected increase in construction costs for
a six-month delay. 
          Charleston’s counsel responded that Charleston was entitled to a temporary
injunction because Charleston had requested an injunction in Charleston’s federal
action “based on the claims that we set forth [in that case that] this bond violates
federal laws, and we’re asking for it from the federal court.” In that regard, he
objected to language in the final judgment, drawn from section 1205.105(c) of the
Texas Government Code, stating that “the Court’s judgment in this lawsuit shall
constitute a permanent injunction against the institution or prosecution by any person
or entity of any new or existing action or proceeding contesting the validity of the
Proposed Public Securities; the expenditure of money relating to the Proposed Public
Securities; the provisions made for the payment of the Proposed Public Securities or
of interest thereon; the validity of the Parking Tax and the Admissions Tax; the funds
authorized to pay for the Proposed Public Securities; any matter adjudicated by the
Court’s judgment in this action; and any matter that could have been raised in these
proceedings.” Cf. Tex. Gov’t Code Ann. § 1205.105(c). Charleston’s counsel
contended that the state court lacked “power under the constitution to enjoin the
federal court from considering these issues as they relate to federal law.” 
Charleston’s counsel also argued that he believed he had strong grounds for an appeal
based on statutory construction of the notice requirement. The trial court then set the
bond amount at $715,000. 
          Under section 1205.102, the trial court was required to grant WISD’s motion
for security unless at the hearing on the motion, Charleston established that he was
entitled to a temporary injunction against issuance of the securities. See Tex. Gov’t
Code Ann. § 1205.102. Charleston failed to present evidence that established his
entitlement to a temporary injunction.


 Therefore, the trial court properly granted
WISD’s motion for security for losses due to delays caused by Charleston’s continued
participation in this lawsuit.
          Having failed to establish his right to an injunction, Charleston also failed to
post the bond required by the trial court’s October 2, 2007 order. Section 1205.104
of the Government Code requires that an intervenor who fails to post bond within 11
days shall be dismissed from the proceedings. Tex. Gov’t Code Ann.
§ 1205.104(a). Following a hearing on WISD’s motion to dismiss, the trial court
dismissed Charleston from the lawsuit on October 13, 2007, and Charleston filed this
appeal, still without posting the security required by the trial court’s October 2 order.
          Section 1205.105(c) provides that if an appeal is taken from an order under
section 1205.103 of the Government Code requiring an intervenor to post security in
a bond validation suit, and the order of the lower court is affirmed, and 
the required bond is not posted before the 11th day after the date of the
entry of the appropriate order, no court has further jurisdiction over any
action to the extent it involves an issue that was or could have been
raised in the action under this chapter, other than an issue that may have
been raised by an opposing party or intervenor who was not subject to
the motion.

Tex. Gov’t Code Ann. § 1205.105(c).
          The Texas Supreme Court has construed the term “the appropriate order” in
section 1205.105(c) of the Code to be the order of the trial court requiring the posting
of security, regardless of whether an appeal is taken or not. See Buckholtz Indep. Sch.
Dist. v. Glaser, 632 S.W.2d 146, 150–51 (Tex. 1982). Thus, if an appellate court
subsequently affirms an order of a trial court requiring an opposing party or
intervenor to post security for delays caused by his continued participation in a bond
validation action under chapter 1205 of the Government Code, and the person subject
to the order failed to post security within 11 days of entry of the order of the trial
court requiring security, then, under the terms of section 1205.105(c) of the Code, 
no court has further jurisdiction over the action to the extent it involves an issue that
was or could have been raised in the bond validation action by the person subject to
the order. See Tex. Gov’t Code Ann. § 1205.105(c); Buckholtz Indep. Sch. Dist.,
632 S.W.2d at 150–51. 
          Charleston failed to post the $715,000 security bond prior to October 13 as
required by the trial court’s October 2, 2007 order. We conclude, therefore, that the
trial court properly granted WISD’s motion for security and that it properly dismissed
him from the proceedings for failing to file the appropriate bond. See Buckholtz
Indep. Sch. Dist., 632 S.W.2d 150–51 (stating that “a legislative purpose in enacting
the statute was to stop ‘the age old practice allowing one disgruntled taxpayer to stop
the entire bond issue by simply filing suit’”); In re Talco-Bogata Consol. Indep. Sch.
Dist. Bond Election, 994 S.W.2d 343, 348 (Tex. App.—Texarkana 1999, no pet.).
          We overrule Charleston’s fifth issue on appeal.
          Charleston next argues that the trial court should have set the bond amount at
zero. Charleston contends that in his second and third points of error, he
“demonstrated that the bonds cannot be authorized or sold so long as the federal case
is pending. Thus his continued participation in this state action will not be a source
of any damage or cost to Waller ISD so long as the federal case is pending, because
Waller ISD cannot sell the bonds, begin construction, etc. until the federal matter is
resolved.” The appellate record shows that Charleston never made this complaint to
the trial court. Thus, the issue is waived on appeal. See Tex. R. App. 33.1(a).
          Because we affirm the trial court’s October 2, 2007 order requiring Charleston
to post a security bond and the trial court’s October 13, 2007 order dismissing
Charleston from the lawsuit, we have no jurisdiction over Charleston’s remaining
claims. See Tex. Gov’t Code Ann. § 1205.105(c); Buckholts, 632 S.W.2d at
150–51. 
 
 
 
Conclusion
          We affirm the trial court’s October 2, 2007 order which required Charleston to
post a security bond of $715,000 to continue as a participant in this lawsuit. We
likewise affirm the trial court’s October 13, 2007 order which dismissed Charleston
from the lawsuit. We dismiss the portion of the appeal that relates to Charleston’s
remaining claims for want of jurisdiction.
 
 
 

                                                             Evelyn V. Keyes
                                                             Justice
 
Panel consists of Justices Nuchia, Jennings, and Keyes.