COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                                 NO.
2-09-426-CV

 

 

WILLIAM COBB                                                                                 APPELLANT

 

                                                             V.

 

CAYE PUBLISHING GROUP, INC.                                                        APPELLEE

 

                                                       ------------

 

              FROM THE 236TH
DISTRICT COURT OF TARRANT COUNTY

 

                                                       ------------

 

                                                      OPINION

 

                                                       ------------

                                                 INTRODUCTION

In this accelerated interlocutory
appeal, Appellant William Cobb challenges the trial court=s
temporary injunction order enforcing a covenant not to compete in an employment
agreement between Cobb and Appellee Caye Publishing Group, Inc.  Because we conclude that the geographical
area of the trial court=s injunction order is
unnecessarily broad, we modify the injunction in terms of geographical scope
and affirm the injunction as modified.  

FACTUAL
AND PROCEDURAL BACKGROUND








Caye Publishing publishes and
distributes a Acoupon
based@
magazine in Johnson County called Local Life.  On May 1, 2008, Caye Publishing hired Cobb to
sell advertising for Local Life as an independent contractor.  The parties signed a AContractor
Agreement@
containing a noncompete clause in which Cobb promised that, upon termination of
his contractual engagement with Caye Publishing, he would not work for a
competing third party or start a publication outside of Caye Publishing for a
term of one year.

Cobb sold advertising space in Local
Life until September 23, 2009, when he resigned.  In early November 2009, he published and
distributed a magazine titled Who What Where in the cities of Aledo and
Weatherford, which are located in nearby Parker County.  Caye Publishing then sued Cobb for breach of
contract, misappropriation of trade secrets, and tortious interference with
contract.  On November 24, 2009, the
trial court signed a temporary injunction order preventing Cobb from starting a
new publication or publishing his existing magazine in Johnson County and in
the cities of Aledo and Weatherford in Parker County.  Cobb now appeals.

LAW
AND APPLICATION TO FACTS

A.      Standard of
Review








A temporary injunction=s
purpose is to preserve the status quo of the litigation=s
subject matter pending a trial on the merits.[1]  A temporary injunction is an extraordinary
remedy and does not issue as a matter of right.[2]  To be entitled to a temporary injunction, the
applicant must plead a cause of action and further show both a probable right
to recover on that cause of action and a probable, imminent, and irreparable
injury in the interim.[3]

Whether to grant or deny a request for a
temporary injunction is within the trial court=s
discretion, and we will not reverse its decision absent an abuse of discretion.[4]  To determine whether a trial court abused its
discretion, we must decide whether the trial court acted without reference to
any guiding rules or principles; in other words, we must decide whether the act
was arbitrary or unreasonable.[5]  A trial court abuses its discretion if it
misapplies the law to established facts.[6]








In an appeal from an order granting or
denying a temporary injunction, the scope of review is restricted to the
validity of the order granting or denying relief.[7]  The legal issues involved in a temporary
injunction hearing are whether the applicant showed a probability of success
and irreparable injury; the ultimate merits of the controversy are not before
the trial court.[8]  Thus, we address the enforceability of the
covenant not to compete only to the extent that it affects the analysis of
whether the elements required for issuance of a temporary injunction have been
satisfied.[9]  Our review of the trial court=s
order is limited to determining whether the trial court abused its discretion
by granting temporary relief.[10]

B.      Probable
Right to Recover

1.       Evaluating
the geographical limitation of a covenant not to compete








Caye Publishing pleaded a breach of
contract cause of action in which it alleged that Cobb had breached the
Contractor Agreement by, among other things, starting a publication outside of
Caye Publishing in a geographical area targeted by Caye Publishing for
expansion.  Generally, every contract in
restraint of trade or commerce is unlawful.[11]  A covenant not to compete, however, is
enforceable if it is ancillary to or part of an otherwise enforceable agreement
at the time the agreement is made to the extent that it contains limitations as
to time, geographical area, and scope of activity to be restrained that are
reasonable and do not impose a greater restraint than is necessary to protect
the goodwill or other business interest of the promisee.[12]  A restraint is unreasonable if it is broader
than necessary to protect the legitimate interests of the employer.[13]  Whether a covenant imposes a reasonable
restraint on trade is a question of law for the court.[14]

In his first issue, Cobb challenges the
reasonableness of the geographical limitation in the trial court=s
injunction, asserting that the trial court abused its discretion by enforcing
an overbroad covenant not to compete and by prohibiting him from publishing in
Aledo and Weatherford.  The noncompete
covenant in the Contractor Agreement contains no geographical limitation at
all; it simply states that Cobb Awill
not work for a competing third party for the term of one year@ and
that he Awill
not start a publication outside of [Caye Publishing] for a term of one year,@
without inclusion of or reference to any geographical area.  A covenant not to compete with a broad
geographical scope is unenforceable, particularly when no evidence establishes
that the employee actually worked in all areas covered by the covenant.[15]  Accordingly, we agree that the noncompete
covenant in this case, which prohibits Cobb from working for a competitor or
publishing any other magazine without any limitation as to geographical area,
is overbroad and unenforceable.[16]









2.       Reforming
the geographical limitation of a covenant not to compete

If the trial court in a suit to enforce
a covenant not to compete determines that the limitations as to time,
geographical area, or scope of activity in the covenant are unreasonable, the
court shall reform the covenant to the extent necessary to cause the
limitations to be reasonable and to impose a restraint that is not greater than
necessary to protect the goodwill or other business interest of the promisee
and enforce the covenant as reformed.[17]  In its temporary injunction order, the trial
court found that Caye Publishing had demonstrated a probable right of recovery
against Cobb and granted injunctive relief, but it restricted the geographical
area of the covenant to Johnson County and the cities of Aledo and Weatherford
in Parker County.  To grant this
injunctive relief, the trial court judge was required to conclude that Caye
Publishing had shown that it would probably succeed on the merits of its claim
of breach of the covenant not to compete as reformed to this geographical area.[18]  It is this conclusion that we review for an
abuse of discretion.[19]









Generally, a reasonable area for
purposes of a covenant not to compete is considered to be the territory in
which the employee worked while in the employment of his employer.[20]  Although Cobb worked only in Johnson County
during his employment with Caye Publishing, Caye Publishing asserts that
including Aledo and Weatherford in the geographical scope of the covenant not
to compete is reasonable because Caye Publishing had already targeted Parker
County for expansion by the time that Cobb resigned.  Thus, the issue in this case is whether a
reasonable geographical limitation of the parties=
covenant not to compete includes areas where Cobb never worked for Caye
Publishing, and where Caye Publishing never actually distributed any
publications, but where Caye Publishing intended to distribute publications at
some point in the future.








Caye Publishing also contends that
extending the covenant=s geographical limitation to
Aledo and Weatherford is reasonable because the evidence showed that Caye
Publishing had made Amore than a cursory inquiry@
into publishing in Parker County. 
Stephen Lee Ellis, publisher of Caye Publishing, testified at the
temporary injunction hearing that at the same time he had started publishing Local
Life in Johnson County, approximately two years earlier, he had also
started researching the feasibility of starting a publication in Parker
County.  He testified that he already had
finished his research and had decided to begin publishing in Parker County
before Cobb left Caye Publishing.  In
February or March 2009, Ellis approached the publisher of Parker County
Today, a publication already being distributed in Parker County, about
buying that publication.  The publisher
declined, but three months later, he contacted Ellis about a sale.  This time, Ellis declined because he had just
started a children=s publication and his Aplate
was full.@  Ellis later contacted the Parker County
Today publisher again about a sale, but the Adeal
fell through.@  Ellis testified that his Adiscussions@
with the publisher were ongoing and that he had met with the publisher and the
publisher=s
business partner the previous week A[t]rying
to come to some agreement.@

Ellis also testified that he had told
Cobb while Cobb was still working for Caye Publishing that Ellis was
researching expansion opportunities in Weatherford and Aledo.  Ellis told Cobb that he intended to let Cobb Arun@ the
Parker County publication once it got started. 
According to Ellis, Cobb was aware that the startup of the Parker County
publication was dependent on Agetting
the revenues [that Caye Publishing] needed to a certain point in Johnson County@ and
that Caye Publishing would not expand into Parker County unless it Agot
Johnson County up to a certain level.@  Furthermore, Ellis testified that Caye
Publishing had looked into starting publications in other cities such as
Cleburne, Mansfield, Flower Mound, and Highland Village but that it had not
actually expanded its operation to those areas.








The parties have not cited, and we have
not found, a case in which a geographical limitation including areas where an
employer does not currently operate but has targeted for future potential
expansion, standing alone, is reasonable. 
Texas law does, however, mandate that a geographical limitation cannot
impose a greater restraint than is necessary to protect the goodwill or other
business interest of the employer.[21]  The trial court stated in its temporary
injunction order that without an injunction, Cobb would damage Caye Publishing=s
interests by displacing its exclusive right to use its research and be the
first to enter markets Atargeted by@
Caye Publishing, thus usurping Caye Publishing=s
opportunity to fill the limited market void, and by capturing customer goodwill
that would otherwise be winnable by Caye Publishing as the first and sole
entrant into the targeted markets.

None of these reasons, however, displays
any connection to Cobb=s activities when he was an
employee of Caye Publishing or to the geographical area in which Cobb actually
worked when he was an employee of Caye Publishing.[22]  During Cobb=s
employment with Caye Publishing, he sold advertising for a publication
distributed in Johnson County only; he never sold advertising for any
publication distributed in Aledo or Weatherford, and Caye Publishing never
distributed any publications in Aledo or Weatherford.  Ellis even testified that Cobb did not
participate in conducting any of the company=s
research into the Parker County market, and Cobb was not part of the
discussions with the publisher of Parker County Today.








Furthermore, the evidence at the
temporary injunction hearing established that Caye Publishing had nothing more
than a potential business interest in Parker County.  There was no testimony that Caye Publishing
had sold any advertising, cultivated any customer goodwill, or taken any action
to start a publication in Aledo or Weatherford other than researching the area
and having back-and-forth Adiscussions@
with an existing publication in Parker County. Caye Publishing complains on
appeal of Cobb=s
contacting some of its Johnson County advertisers to buy ad space in Cobb=s
new Parker County publication as well. 
But Ellis admitted at the temporary injunction hearing that Cobb was not
competing with Caye Publishing for advertisers because Cobb did not have a Johnson
County publication, and Caye Publishing was not in the Parker County market at
that time.








Caye Publishing contends that it was
Cobb=s
fault that Caye Publishing could not enter the Parker County market because
Cobb did not sell enough ads and generate enough revenue for its Johnson County
publication.  Additionally, the trial
court judge stated on the record that he found Cobb=s
actions unconscionable because Cobb had begun preparations to launch his own
publication while he was still employed by Caye Publishing.  But the focus of the legal analysis in this
case is on Caye PublishingCthe
geographical location and reach of its business interests, the extent of Cobb=s
involvement in those business interests while he was working for Caye
Publishing, and the amount of restraint reasonably necessary to protect Caye
Publishing=s
business interests.  Any preresignation
planning or drop in ad sales on Cobb=s
part is not relevant to the evaluation of the geographical extent of injunctive
relief needed to safeguard Caye Publishing=s
legitimate business interests.  We hold
that, under the facts of this case, the trial court abused its discretion by
determining for purposes of the temporary injunction that Caye Publishing had a
probable right to recover for breach of a covenant not to compete in a
geographical area that included Aledo and Weatherford.  We sustain Cobb=s
first issue.

Cobb argues in his second issue that the
trial court abused its discretion by enjoining him from publishing in Aledo and
Weatherford because Caye Publishing showed no evidence of irreparable injury
and had unclean hands. Because Cobb does not challenge the inclusion of Johnson
County in the geographical scope of the temporary injunction order, and because
we have already held that the trial court abused its discretion by entering a
temporary injunction order that enjoined Cobb from starting a publication in
Aledo and Weatherford, we do not reach Cobb=s
remaining issue.[23]


CONCLUSION








Having sustained Cobb=s
first issue, we dissolve those portions of the trial court=s
temporary injunction order restraining Cobb from (1) starting, launching,
operating, or participating in the start or launch of any publication outside
of Caye Publishing and within the cities of Aledo and Weatherford and (2)
publishing or selling any magazine or other publication that Cobb may currently
be publishing or selling outside of Caye Publishing and within the cities of
Aledo and Weatherford.  We modify the
geographical area of the trial court=s
temporary injunction order to Johnson County only, and we affirm the trial
court=s
order as modified.[24]


 

 

LEE
ANN DAUPHINOT

JUSTICE

 

PANEL:  LIVINGSTON, C.J.; DAUPHINOT and MCCOY, JJ.

 

DELIVERED:  August 19, 2010











[1]Walling v. Metcalfe, 863 S.W.2d 56, 57
(Tex. 1993). 





[2]Id.





[3]Butnaru v. Ford Motor
Co.,
84 S.W.3d 198, 204 (Tex. 2002).  





[4]Id.





[5]Low v. Henry, 221 S.W.3d
609, 614 (Tex. 2007); Cire v. Cummings, 134 S.W.3d 835, 838B39 (Tex. 2004).  





[6]State v. Sw. Bell
Tel. Co.,
526 S.W.2d 526, 528 (Tex. 1975); In re Talco-Bogata Consol. Indep. Sch.
Dist. Bond Election, 994 S.W.2d 343, 347 (Tex. App.CTexarkana 1999, no
pet.).





[7]Walling, 863 S.W.2d at 58.





[8]Id.; see also Tom
James of Dallas, Inc. v. Cobb, 109 S.W.3d 877, 882 (Tex. App.CDallas 2003, no
pet.).





[9]See Tom James, 109 S.W.3d at 882.





[10]Id. at 885.





[11]Tex. Bus. & Com.
Code Ann. ' 15.05(a)
(Vernon 2002).





[12]Id. ' 15.50(a)
(Vernon 2002 & Supp. 2009).





[13]DeSantis v. Wackenhut
Corp.,
793 S.W.2d 670, 682 (Tex. 1990), cert. denied, 498 U.S. 1048 (1991).





[14]Light v. Centel
Cellular Co. of Tex.,
883 S.W.2d 642, 644 (Tex. 1994); Peat Marwick Main & Co. v. Haass,
818 S.W.2d 381, 388 (Tex. 1991).





[15]Butler v. Arrow
Mirror & Glass, Inc., 51 S.W.3d 787, 793B94 (Tex. App.CHouston [1st Dist.]
2001, no pet.).





[16]See Goodin v. Jolliff, 257 S.W.3d 341, 352
(Tex. App.CFort Worth 2008, no
pet.) (holding that an agreement restricting a party from starting, directly or
indirectly, a competing business Awithout any limitation as to geographic scope
whatsoever@ was unenforceable).





[17]Tex. Bus. & Com.
Code Ann. ' 15.51(c)
(Vernon 2002).





[18]See id.; Butnaru, 84
S.W.3d at 204 (requiring applicant to show a probable right to recover).





[19]See Butnaru, 84
S.W.3d at 211; Tom James, 109 S.W.3d at 882B83.





[20]Butler, 51 S.W.3d at 793.





[21]See Tex. Bus. & Com.
Code Ann. ' 15.50(a); see
also, e.g., Evan=s World Travel, Inc.
v. Adams,
978 S.W.2d 225, 233B34 (Tex. App.CTexarkana 1998, no
pet.) (holding that a noncompete agreement was enforceable only in the one
county in which an employee had worked for her former employer because she had
not had clients from any other locations); Zep Mfg. Co. v. Harthcock,
824 S.W.2d 654, 660B61 (Tex. App.CDallas 1992, no writ)
(holding that a noncompete covenant that prohibited an employee from working
anywhere, regardless of whether he had serviced the area during his employment,
was unenforceable); Gomez v. Zamora, 814 S.W.2d 114, 118 (Tex. App.CCorpus Christi 1991,
no writ) (holding that a covenant defining Afuture marketing area@ as nearly every
major city in Texas was unenforceable because no evidence established that the
employee actually had worked in all areas covered by the covenant); Webb v.
Hartman Newspapers, Inc., 793 S.W.2d 302, 303 (Tex. App.CHouston [14th Dist.]
1990, no writ) (restricting geographical area of a noncompete covenant between
a newspaper publisher and its former employee to the distribution area of the
newspaper for which the employee had worked). 





[22]See Butler, 51
S.W.3d at 793B94.





[23]See Tex. R. App. P.
47.1.





[24]See Tex. R. App. P.
43.2(b).